14-1468-cv
Smith et al., v. Campbell

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

―――――――――――――

AUGUST TERM, 2014

(ARGUED: MARCH 5, 2015)   DECIDED: April 1, 2015)

No. 14-1468

―――――――――――――

JOANNE SMITH, DONALD SMITH, EDWARD LILLY

*Plaintiffs-Appellants*,

-v.-

BEN CAMPBELL, NEW YORK STATE TROOPER

*Defendant-Appellant,*

NEW YORK STATE POLICE, DIVISION OF STATE POLICE,

*Defendant.*

Before:   GUIDO CALABRESI, PETER W. HALL, *Circuit Judges*, and JED S. RAKOFF, *District Judge*.[1]

―――――――――――――

At issue in this case is whether plaintiff Joanne Smith's First Amendment claim for retaliatory prosecution is time barred and whether plaintiff Edward Lilly's claim for unlawful seizure was properly dismissed by the district court. Because plaintiff Smith's claim is time barred, and because the district court improperly dismissed plaintiff Lilly's claim for failing to plead the claim as arising under 42 U.S.C. § 1983, the judgment of the United States District Court for the Western District of New York (Arcara, *J.*) is hereby AFFIRMED in part, and

---

[1] Hon. Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

1

VACATED in part, and the case is REMANDED to the district court.

_____

| | |
|---|---|
| APPEARING FOR APPELLANTS: | RICHARD H. WYSSLING, Law Office of Richard Wyssling, Buffalo, New York |
| APPEARING FOR APPELLEE: | BEVERLEY S. BRAUN, and Mitchell J. Banas, Jr., Jaeckle Fleischmann & Mugel LLP, Buffalo, New York |

_____

Hall, *Circuit Judge*:

Before us on appeal is an amended complaint alleging various acts of intimidation and harassment aimed at Joanne Smith and Edward Lilly by New York State Trooper Ben Campbell. We AFFIRM that part of the district court's order dismissing Smith's claim for retaliatory prosecution, Lilly's claim of a violation of his First Amendment right to peaceable assembly, and both plaintiffs' claims for intentional infliction of emotional distress. We VACATE and REMAND, however, the dismissal of plaintiff Lilly's unlawful seizure claim.

## BACKGROUND[2]

Smith alleges in her amended complaint that Campbell began harassing her on November 22, 2007 when he tailgated her in an off-duty vehicle, spooking her, and causing her to run a yellow light. Campbell continued to follow Smith until she pulled into the private driveway of a residence from which she was picking up her adult son, Tom Smith ("Tom"). Campbell parked behind Smith's car. He and an off-duty local police officer who had been riding with him then approached the vehicle on opposite sides. Campbell, now standing outside the driver's-side window, identified himself as a New York State Trooper before he and the local officer began to

---

[2] The factual background presented is taken from the allegations of plaintiffs' amended complaint, which we must take as true for purposes of analyzing a motion to dismiss.

2

question Smith about her driving, accusing her of running a red light and failing to legally yield at a stop-sign.

At Campbell's direction, Tom, who had emerged from the house, approached the vehicle and saw that his mother was visibly shaken. Tom and Campbell exchanged heated words, during which Campbell indicated that Smith would receive an additional ticket because Tom was causing trouble. Tom then took out his cell phone and stated that he would call 911 and speak to Campbell's supervisor. Campbell and the local officer immediately left without issuing Smith any tickets at that time.

On November 26, 2007, Smith and her husband Donald Smith visited the New York State Police Barracks where Campbell was stationed and complained about Campbell's conduct. Four hours later, Campbell appeared at Smith's home and delivered to her three traffic tickets related to the November 22 incident.

In December 2007 and January 2008, Smith wrote additional letters to the New York State Police complaining of Campbell's conduct. On January 23, 2008, the state police responded by letter, dismissing her accusations against Campbell. On February 26, 2008, officers appeared at Smith's home suggesting in an intimidating manner that she plead guilty to all of the traffic tickets and that everything would be reduced to a parking ticket as a result.

On July 9, 2008, Smith appeared in Lewiston Town Court to challenge all three tickets. Campbell acted as prosecutor for the case, as is permitted under New York law. Campbell also testified, admitting, among other things, that the tickets were issued partly because Tom was making a scene and Smith refused to admit she had done anything wrong. Smith was convicted on all three tickets. She appealed the Town Court's ruling as to all three tickets.

3

Three days later, on July 12, 2008, while Smith's appeal was pending, Tom remarked at a coffee shop that Campbell had been harassing his mother. As pleaded in the amended complaint, this prompted additional retaliation from Campbell who, later the same day, appeared at Smith's home with a second New York State Trooper, John Pinzotti. Upon their arrival, Smith, who had been outside playing with her grandchild, called Donald and retreated back into the house. Donald informed Campbell and Pinzotti that Tom was not home.

At this point Lilly, Smith's son-in-law, pulled into Smith's driveway. Campbell, recognizing Lilly, ordered him to leave. Lilly refused to leave and requested that Campbell cease harassing his in-laws. In response, Campbell and Pinzotti surrounded Lilly, Campbell standing within six inches of Lilly's face and Pinzotti standing in very close proximity directly behind Lilly. Campbell proceeded to yell at Lilly, again instructing him to leave but continuing to stand sufficiently close so as to block Lilly's egress. Lilly did not move, believing that the close proximity of the officers was purposeful and an attempt, when coupled with the yelling, to cause Lilly to come into physical contact with one of the troopers should he attempt to leave. Lilly believed that if he came into physical contact with either Campbell or Pinzotti he would be arrested and struck by Campbell.

Lilly told Pinzotti that he was only trying to stop Campbell's harassment of his in-laws, prompting Pinzotti to walk away. Campbell, after making additional comments, followed Pinzotti. Pinzotti and Campbell, who had arrived in separate cars, moved their vehicles. Pinzotti parked across the street from Smith's home. Campbell blocked her driveway.

Lilly then called 911 to report Campbell, and Donald, having gone inside and retrieved a camera, began taking pictures. Upon Donald's emergence from the house with the camera, Campbell and Pinzotti departed. Later that day Campbell returned, again parking in front of the

4

Smiths' house. The amended complaint alleges further acts of harassment by Campbell that are unnecessary to detail here.

About eleven months later, on June 4, 2009, two of the three tickets issued to Smith were dismissed on appeal.

Two years later, on June 24, 2011, plaintiffs commenced this § 1983 suit against Campbell. After an initial dismissal with permission to replead, the amended complaint at issue in this appeal was filed. The amended complaint alleges three claims (1) "Deprivation of rights under 42 U.S.C. § 1983," (2) "Deprivation of Rights under Fourth Amendment," and (3) "Intentional Infliction of Emotional Distress."

Defendant moved to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(h)(3). The magistrate judge handling the case construed the amended complaint as alleging four claims: (1) a First Amendment peaceable assembly claim asserted by Lilly, (2) a retaliatory prosecution claim asserted by Smith, (3) an unlawful seizure claim asserted by Lilly, and (4) an intentional infliction of emotional distress claim asserted by both. The magistrate judge's Report and Recommendation ("R&R") recommended granting the motion to dismiss as to the peaceable assembly and intentional infliction of emotional distress claims but also recommended denying the motion as to the retaliatory prosecution and unlawful seizure claims.

Defendant filed objections to the R&R, arguing that Smith's First Amendment claim was time barred and that Lilly's allegations related to his seizure did not plausibly allege a Fourth Amendment violation. In their responsive briefing to defendant's objections, plaintiffs neither filed objections to the R&R, nor challenged the magistrate judge's recommendation that the peaceable assembly and intentional infliction of emotional distress claims be dismissed.

5

The district court adopted the magistrate judge's unchallenged recommendation to dismiss the peaceable assembly and intentional infliction of emotional distress claims, but rejected the recommendation that the retaliatory prosecution and unlawful seizure claims should not be dismissed. The district court held that the retaliatory prosecution claim was time barred because it was filed more than three years after Smith received the tickets from Campbell. It dismissed the unlawful seizure claim solely on the ground that Lilly had improperly identified that claim as arising under the Fourth Amendment rather than under 42 U.S.C. § 1983. This appeal followed.

## DISCUSSION

"We review de novo a district court's grant of a defendant's motion to dismiss . . . including its interpretation and application of a statute of limitations." *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011) (citations omitted).

A. *Lilly's Unlawful Seizure Claim*[3]

When evaluating Lilly's claim that he was constructively seized by Campbell outside of the Smiths' house on July 12, 2008, the district court reasoned as follows:

> [T]he Court previously dismissed pursuant to Fed. R. Civ. P. 12(h)(3) claims asserted in this action directly under the U.S. Constitution. If Plaintiff Lilly has a viable Fourth Amendment claim, he will have to plead it as a § 1983 claim, and he has not done so. The Amended Complaint excludes plaintiff Lilly's Fourth Amendment allegations from his § 1983 claim. Plaintiff Lilly's Fourth Amendment claim is therefore dismissed with leave to replead.

(citations omitted). After the district court's order was entered, the United States Supreme Court made clear that a failure to specify 42 U.S.C. § 1983 as the vehicle for pleading a constitutional

---

[3] Defendant's argument that this claim was abandoned on appeal because plaintiffs did not address it in their brief is without merit. Although the heading in plaintiffs' brief appears to be mislabeled and their argument on this point is less than cogently explained, there is no question that they have argued to this court that Lilly was constructively seized. *See* Pls.' Br. at 16 ("The above facts clearly constituted a constructive seizure."). Defendant's argument that plaintiffs' decision to appeal the dismissal of Lilly's constructive seizure claim, rather than to replead the claim an additional time, amounted to a waiver of Lilly's right to challenge the dismissal on appeal is similarly without merit.

claim is not a defect warranting dismissal, at least in the absence of some prejudice to the defendant. *See Johnson v. City of Shelby*, 135 S. Ct. 346 (2014) (summary reversal). The Court explained that the "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted. In particular, no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Id*. at 346–47 (citations omitted). When, as in this case, plaintiffs have "informed [the defendant] of the factual basis for their complaint, they [are] required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Id*. at 347. Accordingly, especially in light of the Supreme Court's guidance in *Johnson*, the district court dismissal of Lilly's constructive seizure claim on the ground that he failed to specifically identify § 1983 in that portion of the amended complaint was in error.

Campbell has also not been prejudiced by Lilly's failure to identify § 1983 in the amended complaint. Indeed, the defendant's motion to dismiss addresses Lilly's constructive seizure claim as one arising under § 1983. *See* Def.'s Mem. in Supp. of Mot. to Dismiss 6–10 (Dist. Ct. Dkt. No. 38) ("Plaintiff Lilly's Fourth Amendment Claims Still Fail as a Matter of Law Even If Analyzed as 42 U.S.C. § 1983 Claims."). Obviously, this is not a case where the identification of a particular legal theory in the complaint "serves a notice function" that alerts an adverse party to aspects of the case which may not have otherwise been clear on the basis of the complaint. *Johnson*, 135 S. Ct. at 347.

Because it found that dismissal was appropriate on the basis of Lilly's failure to plead § 1983, the district court did not resolve the issue of whether Lilly had otherwise plausibly alleged sufficient facts to support a claim for constructive seizure. *Id*. ("A plaintiff . . . must

plead facts sufficient to show that her claim has substantive plausibility."). Accordingly, Lilly's unlawful seizure claim is remanded for the district court to address that issue in the first instance.

   *B. Smith's First Amendment Retaliatory Prosecution Claim*

  On appeal, plaintiffs argue (1) that Smith's First Amendment retaliatory prosecution claim accrued on July 9, 2008, the date of the Town Court trial, because it was not known whether Smith would be found guilty until that date, and (2) that service of the accusatory instruments, in this case traffic tickets,[4] does not suffice to trigger a retaliatory prosecution claim. We do not agree and affirm the district court's determination that the retaliatory prosecution claim accrued when Campbell delivered to Smith the three traffic tickets on November 26, 2007. Because plaintiffs did not file their initial complaint in this case until June 24, 2011, more than three years after the receipt of the tickets, Smith's First Amendment claim is barred by the statute of limitations.

  "It is undisputed that retaliatory prosecution may expose a state official to section 1983 damages." *Magnotti v. Kuntz*, 918 F.2d 364, 368 (2d Cir. 1990). "The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Thus, for Smith's claim for retaliatory prosecution in violation of her First Amendment rights to be timely, her initial complaint must have been filed within three years of the accrual of her claim. While the applicable statute of limitations in a § 1983 case is determined by state law, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Rather, "it is the standard rule that accrual occurs when the plaintiff has a complete and present

---

[4] We assume without deciding that a retaliatory prosecution claim may arise from the issuance of traffic tickets in New York and treat the issuance of the traffic tickets as the commencement of a criminal proceeding for the limited purpose of explaining why Smith's claim fails regardless on statute of limitations grounds.

cause of action, that is, when the plaintiff can file suit and obtain relief." *Id*. (citations and internal marks omitted). Importantly for this case, "the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." *Id*. at 392 (citation omitted).

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). All three of these elements were met at the time Smith was served with the three traffic tickets because by that time (1) Smith had engaged in protected speech by complaining about Campbell's conduct, (2) Campbell's appearance at her house to deliver the tickets mere hours later was sufficiently proximate to imply that the issuance of the tickets was motivated by Smith's complaint, and (3) issuance of the tickets was an injury in that it subjected her to a state action requiring that she either appear in court, pay a fine, or both. Accordingly, her cause of action for First Amendment retaliation accrued on November 26, 2007, more than three years prior to the filing of the initial complaint. That the full scope of her injury was not known at that time, including whether or not she would be convicted of the traffic infractions and that Campbell would continue harassment,[5] does not alter the date that her cause of action accrued. *Wallace*, 549 U.S. at 391.

Plaintiff argues that the accrual of her claim was delayed until after her trial or appeal and incorrectly cites *Heck v. Humphrey*, 512 U.S. 477 (1994), for this proposition. Quite apart from whether *Heck* is at all relevant, her argument mistakenly conflates the Fourth Amendment tort of

---

[5] Plaintiffs do not argue that Campbell's later conduct operated to toll the statute of limitations for Smith's First Amendment claim on the basis of the continuing violation doctrine, and we express no view as to the applicability of the doctrine in this case. *See generally Washington v. County of Rockland*, 373 F.3d 310, 317–18 (2d Cir. 2004).

9

malicious prosecution with the First Amendment tort of retaliation. These two kinds of claims are not subject to the same standards. *See Johnson v. Bax*, 63 F.3d 154, 159–61 (2d Cir. 1995).

It is true that, in New York, "[m]alicious prosecution suits require, as an element of the offense, the termination of the proceeding in favor of the accused . . . . [and] the tort cannot stand unless the underlying criminal cases finally end in failure." *Poventud v. City of New York*, 750 F.3d 121, 130–31 (2d Cir. 2014) (en banc) (majority opinion) (citations and internal marks omitted). As a result, "several United States Courts of Appeals have cited *Heck v. Humphrey* as authority for the proposition that § 1983 claims for malicious prosecution do not accrue until their respective criminal prosecutions end in acquittal." *Id.* at 131 (citation and internal marks omitted). Thus, it may be that had Smith's claim been one for malicious prosecution in violation of her Fourth Amendment rights, that claim would not have accrued until after the trial and appeal related to her tickets. That, however, is not the cause of action which plaintiffs have pressed in this case.

As the Supreme Court explained in *Wallace*, delayed accrual of the constitutional tort in *Heck* occurred because in that case there was an extant criminal conviction that, unless otherwise expunged, a federal court's finding of a constitutional violation under § 1983 would necessarily "impugn." *Wallace*, 549 U.S. at 393. Put another way, *Heck* only comes into play potentially to delay accrual of an action when a resolution of that action in a plaintiff's favor could not be reconciled with an extant criminal conviction. *Poventud*, 750 F.3d at 132 (majority opinion). The *Heck* rule *does not* delay the accrual of "an action which would impugn *an anticipated future conviction*." *Wallace*, 549 U.S. at 393. Nor does the *Heck* rule operate as a toll on the statute of limitations when a criminal conviction that would be impugned by a § 1983 action occurs after the accrual of the § 1983 action. *See id.* at 394–396.

10

"Not every § 1983 claim that arises out of a criminal case requires that the underlying criminal process reach a favorable termination . . . Unlike malicious prosecutions, many violations of constitutional rights, even during the criminal process, may be remedied without impugning the validity of a conviction." *Poventud*, 750 F.3d at 132 (majority opinion). In this Circuit, First Amendment claims, even those arising out of the same series of events that give rise to Fourth Amendment claims, do not require a favorable termination in the criminal action to be cognizable as a matter of law. *Bax*, 63 F.3d at 159 ("Unlike claims sounding in malicious prosecution . . . the favorable termination of a criminal proceeding is not an essential element of an independent First Amendment claim."). Moreover, the First Amendment retaliatory prosecution claim here presents itself in a temporal posture similar to the unlawful arrest claim that the Supreme Court's decision in *Wallace* held accrued prior to any conviction. Just as in a false arrest claim, the cause of action here accrues when all of the elements necessary to state the claim are present, even though later developments in a related criminal action may ultimately effect the viability of the claim and a stay of the § 1983 action may be appropriate while the criminal action pends. *See Wallace*, 549 U.S. at 394 ("If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed absent some other bar to suit."); *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (holding that the existence of probable cause for an arrest alleged to be in retaliation for protected speech affects the second prong of the First Amendment analysis); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995); *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992).

As a consequence of the foregoing analysis, there is nothing in our prior case law that delays the accrual of Smith's claim for retaliatory prosecution in violation of her First

11

Amendment rights. Having not been delayed or otherwise tolled, Smith's claim accrued on November 26, 2007. Thus, the district court was correct that Smith's claim for retaliatory prosecution, filed more than three years later on June 24, 2011, is barred by the statute of limitations. The holding of the district court as to this claim is affirmed.

### C. The Remaining Claims Are Waived

Plaintiffs' submission on appeal is less than ideally clear as to the extent that they challenge the district court's adoption of the magistrate judge's recommendation that the intentional infliction of emotional distress and peaceable assembly claims be dismissed. Because they did not object to the R&R before the district court, however, we would decline to reach those arguments in any case.

As noted, the R&R's recommendations that the intentional infliction of emotional distress and peaceable assembly claims be dismissed were not objected to before the district court. Indeed, plaintiffs filed no objections whatsoever to the R&R despite being warned in the R&R itself that "[f]ailure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order." "Where parties receive clear notice of the consequences, failure to timely object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision." *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (citing *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)). Accordingly, plaintiffs' intentional infliction of emotional distress and peaceable assembly claims are deemed waived, and the court will not address them.

**III. Conclusion**

We have carefully reviewed the parties' additional arguments and find them to be without merit. For the reasons set forth, the judgment of the district court is AFFIRMED as to all claims except Lilly's claim for unlawful seizure. The district court's decision with respect to that claim is VACATED, and the claim is REMANDED for the district court to address whether the factual allegations of the amended complaint adequately allege a constructive seizure violative of the Fourth Amendment and for further proceedings consistent with this opinion.